IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------X
WALTER K HURDLE

Plaintiff



CV 16 - 4186

v

42 U.S.C. § 1983 COMPLAINT
(Plaintiff on Parole Supervision)
Petitioner Request a Jury Trial
COGAN, J.

SERGEANT JOHN PAGNOTTA
POLICE OFFICER BRIAN HEEREY
POLICE OFFICE CHRISTOPHER MULLANE
POLICE OFFICER MICHAEL DEBONIS
DETECTIVE JOSEPH JORDAN
SEAN BEATON, N.Y.S. DEPARTMENT OF MOTOR VEHICLES EMPLOYEE
PATRICIA THEODOROU, ASSISTANT DISTRICT ATTORNEY
RICHARD BROWN, QUEENS DISTRICT ATTORNEY

Defendant's
--------------------------------------------------------------X



RECEIVED
JUL 2 6 2016
PRO SE OFFICE

- 1 -

## I. LEGAL BASIS FOR CLAIM

Plaintiff brings this action challenging the constitutionality of his confinement for the past 114 months under 42 U.S.C. § 1983 in violation of his federal constitutional rights.

## II. PLAINTIFF INFORMATION

Walter K Hurdle, DIN # 09A4767
Five Points Correctional Facility
6600 Sate Route 96
Romulus, New York 14542

## III. PRISONER STATUS

Presently under parole supervision

## IV. JURISDICTION AND VENUE

1.    This Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1343(3) and (4). The matters in controversy arise under 42 U.S.C. § 1983.

2.    Venue properly lies in this District pursuant to 28 U.S.C. § 1391(b)(2), because the events giving rise to this cause of action in Queens County, which is located in the Eastern District of New York.

## V. PLAINTIFF INFORMATION

1.    Plaintiff Walter K Hurdle was, at the time of the events relevant hereto, a United States Citizen dwelling in Valley Stream, Nassau County, New York.

## VI. DEFENDANT'S INFORMATION

Defendant 1:    John Pagnotta was a New York City Police officer with the rank of sergeant, who at all times relevant hereto was assigned to the 113th precinct in Queens County, New York. At all times relevant, Police Commissioner Raymond Kelly's abdication of his administrative

- 2 -

responsibility to properly train and discipline officers, and to investigate and deter acts of misconduct in criminal cases, caused Plaintiff to be wrongfully arrested, convicted and sentenced to 15 years and 3 years post release supervision.

**Defendant 2:** Brian Heerey was a New York City Police officer, who at all times relevant hereto was assigned to the 113th precinct in Queens County, New York. At all times relevant, Police Commissioner Raymond Kelly's abdication of his administrative responsibility to properly train and discipline officers, and to investigate and deter acts of misconduct in criminal cases, caused Plaintiff to be wrongfully arrested, convicted and sentenced to 15 years and 3 years post release supervision.

**Defendant 3:** Christopher Mullane was a New York City Policer, who at all times relevant hereto was assigned to the 113th precinct in Queens County, New York. At all times relevant, Police Commissioner Raymond Kelly's abdication of his administrative responsibility to properly train and discipline officers, and to investigate and deter acts of misconduct in criminal cases, caused Plaintiff to be wrongfully arrested, convicted and sentenced to 15 years and 3 years post release supervision.

**Defendant 4:** Michael Debonis was a New York City Police officer with the rank of sergeant, who at all times relevant hereto was assigned to the 113th precinct in Queens County, New York. At all times relevant, Police Commissioner Raymond Kelly's abdication of his administrative responsibility to properly train and discipline officers, and to investigate

and deter acts of misconduct in criminal cases, caused Plaintiff to be wrongfully arrested, convicted and sentenced to 15 years and 3 years post release supervision.

**Defendant 5:**  Joseph Jordan was a New York City Police officer with the rank of detective, who at all times relevant hereto was assigned to the 113th precinct in Queens County, New York. At all times relevant, Police Commissioner Raymond Kelly's abdication of his administrative responsibility to properly train and discipline officers, and to investigate and deter acts of misconduct in criminal cases, caused Plaintiff to be wrongfully arrested, convicted and sentenced to 15 years and 3 years post release supervision.

**Defendant 6:**  Sean Beaton was an employee of the New York State Department of Motor Vehicles, and at all times relevant hereto, was operating under the direction of the Queens County District Attorney and his assistants.

**Defendant 7:**  Patricia Theodorou was, at all times relevant hereto, an Assistant District Attorney in Queens County.

**Defendant 8:**  Richard Brown was, at all times relevant hereto, the Queens County District Attorney. As Queens County District Attorney, defendant managed day-day operations of that office and executed its policies.

## VI. STATEMENT OF CLAIM

On January 18, 2007, in an unmarked police vehicle, defendants Sergeant John Pagnotta and Officers Debonis, Mulane and Heerey, each employees of the New York City police department, were canvassing Sutphin Blvd and 122nd Ave in Queens New York.

- 4 -

Parked on the opposite side of the street, three car-lengths from the corner, Pagnotta noticed a gray car with a lone male inside. Pagnotta, intending to draw nearer to the gray car, ordered Officer Debonis to make a U-Turn and proceed back to that gray car. However, instead of following Pagnotta's instruction, Debonis mistakenly drove past the gray car and stopped next to the Plaintiff's black SUV, which was parked at the corner of 122nd Ave and Sutphin Blvd.

As Plaintiff was taking on his mobile phone and making repairs to his truck's DVD player, Pagnotta, Debonis, Mulane and Heerey exited their vehicles and surrounded Plaintiff's truck. Blocking the driver's and passenger's side doors, the officers pulled at the truck doors and peered through the windows with their flashlights.

After Pagnotta knocked on the driver's side window, Plaintiff lowered the windows an inch. Although blinded by the officers' flashlights, when Pagnotta ordered Plaintiff to lower the window further, he complied and lowered it another four inches.

Pagnotta then asked Plaintiff what he was doing, and Plaintiff explained that he was fixing his DVD player. Although Plaintiff had violated no laws, Pagnotta demanded his license, registration and insurance card. Removing the documents from the center console of his truck, Plaintiff then handed them over to Pagnotta. Yet, because Plaintiff told Pagnotta that he lived in Valley Stream, which differed from the address on his driver's license, Pagnotta requested documentation verifying the Valley Stream address. In response, Plaintiff produced a temporary New York State non-driver identification card, but because he had done nothing wrong, he grew suspicious that Pagnotta and his cohorts were up to no good and that an assault from the police was inevitable.

Pagnotta, unsatisfied with Plaintiff's answers "I live in Valley Stream and fixing my DVD player on Sutphin Blvd" passed all of the documentation to Officer Mullane, and the two officers' then walked to the rear of Plaintiff's truck. Watching from his rear view mirror, Plaintiff noticed that Pagnotta did not return to his car to run the documents or communicate via his two-way radio. As Pagnotta and Mullane stood at the rear of Plaintiff's truck, Officer Heerey, who was standing outside Plaintiff's front passenger door, order Plaintiff to lower the passenger side window. Once Plaintiff complied, Heerey shone his flashlight on him and throughout the vehicle.

Within moments of securing Plaintiff's documentation, Officer Debonis moved his police vehicle forward and positioned his unmarked police vehicle at an angle in front of Plaintiff's truck so as to block its path.

Accompanied by Officer Mullane, Pagnotta then returned to Plaintiff's truck and asked whether he was holding any drugs or guns in the truck. After Plaintiff told the officers that he did not possess any drugs or weapons, Pagnotta ordered Plaintiff to exit the truck. Frightened and believing he would be assaulted or falsely accused, Plaintiff refused to exit the truck unless a captain or marked police vehicle showed up at the scene. Insisting he was "the fucking boss," Pagnotta ordered Plaintiff to "get the fuck out of the car."

Pagnotta admitting that at no time prior to the positioning of the police vehicle so as to block Plaintiff's movement, was the Plaintiff engaged in criminal activity, or any activity that would cause reasonable suspicion, simultaneously with Officer Heerey, opened the driver's and passengers side doors. Pagnotta who had opened the driver's door, pulled Plaintiff halfway out of the truck, while Plaintiff struggled to pull himself back in.   Terrified and fearing a vicious beating, Plaintiff put the trucks shifter into drive, turned his wheel to the

right to avoid the unmarked police vehicle blocking his pathway, and floored the gas pedal. Pagnotta grabbed the wheel and yanked it to the left. With the vehicle engine racing and unable to get traction skidding on the snow, Plaintiff's vehicle speedometer was reading 50mph, however 3mph was the actual speed the vehicle was traveling while Pagnotta ran alongside it trying to gain control. Pagnotta while holding onto the steering wheel caused Plaintiff's vehicle to collide with the unmarked police car in front of it.

Pagnotta was unintentionally injured during the collision and, fearing he would be harmed, Plaintiff drove from the scene. In all of the excitement, when Plaintiff turned his vehicle onto the Vanwyke Expressway, his driver side door flew open and he fell from his vehicle.

Being dragged approximated sixty feet while hanging from his trucks steering wheel and driver's side door, Plaintiff managed to gain control of his truck by holding the driver's door with his left hand and hitting the brake pedal with his right hand.

After surrendering himself to authorities the following afternoon, Plaintiff was wrongfully arrested and charged with assault on a police officer in violation of, inter alia, New York Penal Law Sections §120.11 and §120.08, as well as a violation of New York's Vehicle and Traffic Law. However, a state supreme court judge dismissed Plaintiff's initial indictment because the state presented no evidence that Plaintiff operated a motor vehicle without a license on January 18, 2007, which the judge considered a vital element of the assault charges. The judge further concluded that dismissal of the indictment was warranted because ADA Theodorou failed to instruct the grand jury on the defense of justification. The State, nevertheless, was granted leave to re-present the charges before another grand jury.

On August 21, 2007, approximately one week before the charges were re-presented before another grand jury, Detective Joseph Jordan informed prosecutors at the Queens District Attorney's office that he found Plaintiff's driver's license, which was not given to ADA Theodorou at any time prior to or during the first grand jury presentment. Jordan told prosecutors that he found Plaintiffs license, which had been issued by the State of North Carolina, inside the pocket of the coat Plaintiff was wearing when Pagnotta was injured, and which was later confiscated from Plaintiff's abandoned truck. Supposedly, Jordan waited seven months before telling prosecutors police were in possession of Plaintiff's driver's license.

Although ADA Theodorou was aware Plaintiff had a valid North Carolina driver's license "now in her possession" and therefore had driving privileges in the State of New York, she and New York State Department of Motor Vehicle employee, Sean Beaton, conspired to present perjured testimony to the second grand jury. Suborning perjury, ADA Theodorou knowingly allowed NYSDMV employee Sean Beaton to testify before the grand jury that Plaintiff did not have driving privileges in the State of New York on January 18, 2007. Beaton's perjury misled the grand jury by suggesting that Pagnotta and his colleagues had a legitimate reason to detain and seize Plaintiff, and, as a result, were engaged in a lawful duty, "lawful duty" an essential element of New York State's Penal Law Section §120.08. Fearing the grand jury would refuse to indict, ADA Theodorou never made the grand jury aware that Plaintiff had driving privileges in the State of New York on January 18, 2007.

ADA Theodorou's misconduct was prompted, influenced, and sanctioned by Queens DA Richard Brown's deliberate refusal to discipline his assistants for acts of misconduct committed when prosecuting criminal defendant's. Richard Brown's abdication of his

administrative responsibility to properly train and discipline prosecutors, and to investigate and deter acts of misconduct in criminal cases, caused ADA Theodorou's misconduct before the grand jury.

On September 8, 2009, as a result of several errors by the court and Queens ADA's, Plaintiff was erroneously and unlawfully convicted of several counts of assault, including first degree assault on a police officer and depraved indifference assault. Plaintiff was sentenced to twenty years' imprisonment for first degree assault convictions.

On May 29, 2013, the Appellate Division, Second Department, reversed and dismissed Plaintiff's first degree assault conviction, finding the evidence insufficient to establish the police were engaged in a "lawful duty" or that Plaintiff acted with depraved indifference to human life. The Appellate Division, however left intact the remaining assault conviction because the claim pertaining to those counts were based on matter <u>dehors</u> the record.

**GROUND ONE**

Defendants' Sergeant Pagnotta and Officers Heerey, Mullane and Debonis, acting under color of state law, infringed upon Plaintiff's rights under the fourth and fourteenth Amendments of the U.S. Constitution; namely, to be free from unreasonable searches and seizures. Motivated by racial profiling and racial bias, defendants' stopped, obstructed and unlawfully seized Plaintiff's person and motor vehicle without reasonable suspicion or probable cause. Plaintiff's arrest, conviction and sentence were the proximate results of this illegal stop.

Defendants' unconstitutional conduct has caused Plaintiff to suffer severe, psychological distress and harm, financial and deteriorating physical health.

While wrongfully imprisoned for the assault on a police officer conviction, Plaintiff was held at a maximum security prison, around societies most antisocial and violent individuals, where he was often threatened by prison guards, who accused him of being a "cop beater," and warned that corporal punishment was the way guys like the Plaintiff was dealt with.

The residual effects of the Fourteenth Amendment violation caused Plaintiff to suffer severe anxiety, and worsening mental and physical health.

## GROUND TWO

New York State Department of Motor Vehicles Employee, Sean Beaton, violated Plaintiff's rights under the Due Process Clause of the Fourteenth Amendment by knowingly offering perjured testimony before the grand jury, and testifying categorically that Plaintiff did not have driving privileges in the State of New York. Defendant's misconduct was a proximate result of ADA Theodorou's misconduct before the grand jury. Plaintiff's conviction was a proximate result of this false testimony.

## GROUND THREE

ADA Patricia Theodorou violated Plaintiff's rights under the Due Process Clause of the Fourteenth Amendment by encouraging, and failing to disclose exculpatory material relevant to the case, and to correct DMV employee Sean Beaton's false testimony before the grand jury. ADA Theodorou knew or reasonably should have known Sean Beaton's testimony concerning Plaintiff's driving privileges was false. Defendant's misconduct was a proximate result of ADA Theodorou's misconduct before the grand jury. Plaintiff's conviction was a proximate result of this false testimony.

## VII. RELIEF

**Plaintiff** at liberty prior to this unfortunate incident was a proud homeowner in Valley Stream New York, also owned and operated a charter bus company, who now owns nothing. In a ruling by the Supreme Court - Appellate Division Second Department, it was determined that the conduct of the police was unlawful and deliberate. While divorced, Plaintiff was still living at home with his wife and kids, who is now forced to live in his mother's apartment in Brooklyn New York, in a small bedroom inside a New York City Housing Authority development.

While collecting Medicaid and food stamps, Plaintiff now a convicted violent felony offender, was limited to working the minimum wage. While incarcerated, Plaintiff's son fell victim to the streets without the fatherly guidance protection, was incarcerated himself for seven years. While incarcerated, Plaintiff's daughter fell victim to the streets without the fatherly guidance and protection, she suffers emotionally on a regular basis that ultimately resulted in a nervous breakdown and permanent brain damage. Plaintiff's mug shot and wanted poster was aired over the news media and in newspapers domestic and foreign. Plaintiff's profile picture was plastered via social media with false allegations and was a complete fabrication of the facts herein thereby degrading his character. Plaintiff's picture profile down to today still portrays him as a violent offender, a "cop dragger" and presently is a Google search engine site destination, even though the assault on a police officer charge was dismissed by the Appellate Division.

The damage to his reputation has been scared and irreparable, and now fears for his life every time a police officer is present, or comes into his immediate vicinity. Plaintiff even

now, is unable to lead a normal life subject to the conditions of parole. Plaintiff must comply with a 9pm to 7am curfew, unable to drink alcoholic beverages, unable to leave the city without permission, unable to acquire a driver's license, unable to own a vehicle, unable to visit his son without permission, and the greatest injustice suffered, is the business Plaintiff started upon release from confinement, a vendor package company for NYSDOCCS with his parole officers knowledge, that was recently and blatantly brought to complete halt, because Plaintiff, cannot own a business while under parole supervision... and do business with DOCCS.

In essence, on June 21, 2016, Plaintiff received notification from NYSDOCCS to cease operation, even after supplying them with knowledge that he has approval letters from 40 different NYSDOC correctional facilities, has been in existence and shipping packages since 10/2015, in debt to creditors in excess of $100,000, a lease on an office/warehouse, a $2,000 weekly payroll and numerous creditors who trusted he'd be forthcoming.

Even after Plaintiff sincere attempts to re-enter society on an honest note, he's still reeling from the effects of the unlawful stop, seizure, false arrest, seven-year conviction and sentence. The misconduct of the New York City Police Department sergeant detective and officers, the New York State Department of Motor Vehicle employee Sean Beaton, ADA Theodorou and Queens District Attorney Richard Brown mentioned above in Plaintiff's complaint to date is a proximate result of this unlawful stop, seizure, false arrest, seven-year conviction and sentence violation of his federal constitutional rights.

For relief in all of the above, Plaintiff hereby asks this court to grant him relief by way of judgement, in the amount of $50,000,000 (Fifty Million Dollars).

## VIII. PLAINTIFF'S CERTIFICATION AND WARNINGS

By signing below, I certify to the best of my knowledge, information, and belief that: (1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

I understand that if I file three or more cases while I am a prisoner that are dismissed as frivolous, malicious, or for failure to state a claim, I may be denied *in forma pauperis* status in future cases.

I also understand that prisoners must exhaust administrative procedures before filing an action in federal court about prison conditions, 42 U.S.C. § 1997e(a), and that my case may be dismissed if I have not exhausted administrative remedies as required.

I agree to provide the Clerk's Office with any changes to my address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to proceed without prepayment of fees, each plaintiff must also submit an IFP application.

| July 25, 2016 | | | |
|---|---|---|---|
| Dated | | Plaintiff's Signature | |
| Walter | K | Hurdle | |
| First Name | Middle Initial | Last Name | |
| 162 Troy Avenue # 9F | | | |

| Brooklyn | | New York | 11213 |
|---|---|---|---|
| County, City | | State | Zip Code |

Date on which I am delivering this complaint to prison authorities for mailing:   N/A

- 13 -

## FOR PARTIES WITHOUT AN ATTORNEY

**I agree to provide the Clerk's Office with any changes to my address where case related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.**

**Date of signing: July 25, 2016**

**Signature of Plaintiff:**

**Printed Name of Plaintiff: Walter K Hurdle**

Submitted 7/26/16

-14-